FILED
United States Court of Appeals
Tenth Circuit

**April 4, 2011**

# UNITED STATES COURT OF APPEALS

Elisabeth A. Shumaker
Clerk of Court

## TENTH CIRCUIT

---

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC., a Delaware corporation,

    Plaintiff-Appellee,

v.

PAMELA WHITNEY; ESTATE OF
SUZANNE WHITNEY; ESTATE OF
MARY WHITNEY,

    Defendants-Cross/Claimants-
    Appellants,

and

AMBER CALLAWAY,

    Defendant-Cross/Defendant-
    Counter/Claimant.

No. 10-5072

(D.C. No. 4:09-CV-00078-GKF-FHM)
(N.D. Okla.)

---

## ORDER AND JUDGMENT[*]

---

Before **BRISCOE,** Chief Judge, **EBEL** and **TYMKOVICH**, Circuit Judges.

---

    Defendants-Appellants Pamela Whitney, the Estate of Mary Whitney, and the

Estate of Suzanne Whitney appeal from the district court's order granting plaintiff Merrill

---

    [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Lynch's motion to confirm an arbitration award in this interpleader action.  Exercising

jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the judgment of the district court and

grant Merrill Lynch's request for appellate fees and costs pursuant to 28 U.S.C. § 1927.

I

*The IRA accounts*

Mary Whitney (Mary), the mother of Pamela Whitney (Pamela) and Suzanne

Whitney (Suzanne), died in May of 2007.  At the time of her death, Mary owned two

Individual Retirement Accounts (IRAs) held by Merrill Lynch.  One of the accounts was

a regular IRA; the other was a Roth IRA.  For each account, Mary had designated both

Pamela and Suzanne as beneficiaries, with each to receive 50% of the assets held therein

upon Mary's death.

Following Mary's death, Suzanne, who maintained an IRA account of her own

with Merrill Lynch, elected to have her share of her mother's IRA accounts placed into

two new Merrill Lynch beneficiary-controlled accounts, rather than distributed directly to

her.  To do so, Suzanne completed a form entitled "Merrill Lynch Client Relationship

Agreement" (CRA).  Aplt. App. at 80.  The CRA included spaces for two client names

and their related information: "Client 1" and "Client 2."  Id.  Suzanne entered her name

and relevant information (address and social security number) in the "Client 1" area of the

form and left the "Client 2" area of the form blank.  Id.  Under a section of the CRA

designated for the creation of "Retirement" accounts, Suzanne indicated that she was

interested in opening two accounts: one "Inherited IRA" account and one "Roth IRA"

2

account.  Id.  Unfortunately, that section of the CRA did not readily allow for the creation of more than one account per client.  More specifically, that section contained (1) a line that read "Retirement Account for Client 1," followed by boxes indicating the specific type of retirement account being created, the account number, and, for inherited IRA accounts, the name of the "NOW DECEASED ACCOUNT OWNER," and (2) a second identical line that began with "Retirement Account for Client 2."  Id.  In the first line of this section (i.e., the line designated "Retirement Account for Client 1"), Suzanne checked the box "Inherited IRA", entered an account number of 65971152, and listed the "NOW DECEASED ACCOUNT OWNER" as "MARY WHITNEY."  Id.  In the second line of this section (i.e., the line designated "Retirement Account for Client 2"), Suzanne checked the box "Roth IRA, entered an account number of 65971155, and again listed the "NOW DECEASED ACCOUNT OWNER" as "MARY WHITNEY."  Id.  A separate part of the section designated for the creation of "Retirement" accounts allowed for the designation of beneficiaries for "Client 1" and "Client 2."  Id.  For "Client 1," Suzanne listed "AMBER NICOLE CALLAWAY" as the sole "Primary Beneficiary," and "PHYLLIS J. DORIAN" as the sole "Contingent Beneficiary" (and included the birth date and social security number for each of these women).  Id.  Notably, Suzanne did not list any beneficiary for "Client 2."  Id.  Finally, Suzanne signed and dated the CRA (June 27, 2007).[1]

---

[1] As noted, Suzanne also maintained her own IRA account with Merrill Lynch, separate from the two beneficiary-controlled accounts.  According to Pamela, on the same

(continued...)

Suzanne died intestate on October 25, 2007, approximately four months after opening the two beneficiary-controlled accounts with Merrill Lynch.  At the time of Suzanne's death, account number 65971152 had a net value of $95,326.49, and account number 65971155 had a net value of $274,620.82.  Probate proceedings were initiated in the District Court of Tulsa County, Oklahoma, and on May 21, 2008, Suzanne's estate was formally closed and Pamela was declared to be her sole heir.  Thus, absent Suzanne's designations of beneficiaries, Pamela would have inherited the proceeds of Suzanne's Merrill Lynch accounts.

*State court proceedings re Suzanne's competency*

In 2008, Pamela filed suit in the District Court of Tulsa County against Merrill Lynch and Callaway.  Pamela alleged that, as of June 2007, Suzanne lacked the requisite mental capacity to designate a beneficiary for her Merrill Lynch accounts (including the two beneficiary-controlled accounts she had created, as well as her personal IRA account).  Pamela also alleged that Merrill Lynch lacked authority to transfer assets from Mary's IRAs to Suzanne's beneficiary-controlled accounts, and that the CRA, pursuant to which Suzanne designated Callaway as the primary beneficiary for her beneficiary-controlled accounts, was unlawful.

---

[1](...continued)
date that Suzanne created the two beneficiary-controlled accounts (June 27, 2007), Suzanne "also executed a Beneficiary Designation/Change Fee Preference Form changing the beneficiary designation on her personal IRA account at Merrill Lynch (account number 659-84028) from Mary Whitney (primary beneficiary) and Pamela Whitney (contingent beneficiary) to Amber Callaway (primary beneficiary) and Phyllis Dorian (contingent beneficiary)."  Aplt. App. at 100.

Merrill Lynch sought to compel arbitration of Pamela's claims against it.  The state district court, however, dismissed Merrill Lynch from the action with instructions to freeze Suzanne's accounts until the state court action was resolved.

Pamela subsequently voluntarily dismissed all claims against Callaway that were related to the beneficiary-controlled accounts, leaving only claims pertaining to Suzanne's designation of Callaway as the beneficiary for Suzanne's personal IRA account with Merrill Lynch.  In December 2008, the case proceeded to trial and a jury returned a verdict against Pamela, finding that Suzanne was of sound mind when she named Callaway as the beneficiary for her personal IRA account.  The jury further found that Callaway was not unjustly enriched by Suzanne's designation of her as beneficiary.

Pamela unsuccessfully appealed the verdict and judgment.

*The FINRA arbitration proceedings*

On or about July 11, 2008, Pamela filed a Statement of Claim (SOC) with the Financial Industry Regulatory Authority (FINRA) initiating an arbitration proceeding against Merrill Lynch, the Estate of Mary Whitney, the Estate of Suzanne Whitney, and Callaway.  Pamela alleged claims for declaratory judgment (Claims One, Two, Six, Seven and Nine), breach of fiduciary duty (Claim Three), negligence (Claim Four), breach of contract (Claim Five), refund of monies paid (Claim Eight), and injunctive relief (Claim Ten).  As she had done in the prior state court proceedings, Pamela alleged that Suzanne was "of unsound mind and incapacitated" at the time she designated Callaway as the beneficiary for her Merrill Lynch accounts.  Id. at 184.  Pamela also alleged, in pertinent

part, that Merrill Lynch lacked the authorization necessary to distribute the assets from her mother's IRAs, and that the contract between Merrill Lynch and Suzanne, pursuant to which Suzanne designated beneficiaries for the two IRA accounts she created, was unlawful.

In connection with the arbitration proceeding, Pamela, the two Estates, and Merrill Lynch executed written Uniform Submission Agreements pursuant to which each agreed to submit their claims to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of FINRA. Callaway, however, refused to submit to arbitration.

A hearing was held in Oklahoma City before the FINRA Arbitration Panel (Panel) on August 4-6, 2009. During the hearing, a Merrill Lynch representative, Debbie Lambrecht, testified that Merrill Lynch would have construed Suzanne's entries in the CRA form as indicating her intent to create two beneficiary-controlled accounts with the same beneficiaries for each: Amber Callaway as the primary beneficiary and Phyllis Dorian as the contingent beneficiary.

At the conclusion of the hearing, "the Panel requested and received submissions on attorney fees and costs from both [Pamela] and Merrill Lynch and the record in the case was closed." Id. at 40. On October 21, 2009, the Panel issued its written award, concluding, in pertinent part, as follows:

> After considering the pleadings, testimony, the evidence presented at the hearing and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

6

1.)    Claimant's claims, each and all, are hereby denied and dismissed with prejudice;

2.)    Pamela Whitney, the Estate of Suzanne Whitney, and The Estate of Mary Whitney, are jointly and severally liable for and shall pay to Merrill Lynch, Pierce Fenner & Smith, Inc. the sum of $93,295.00 in attorneys' fees and costs pursuant to Oklahoma common law and the panel's equitable authority;

3.)    Other than Hearing Session Fees which are specified below, the parties shall each bear their own costs and expenses incurred in this matter; and

4.)    Any relief not specifically enumerated, including sanctions, is hereby denied with prejudice.

Id. at 41.[2]

*The federal interpleader proceedings*

On January 22, 2009, Callaway, through counsel, made a written demand on Merrill Lynch for payment of funds in the Suzanne Whitney Beneficiary Controlled Accounts. On February 4, 2009, in response to Callaway's demand, Merrill Lynch filed a petition for interpleader in the District Court of Tulsa County naming Pamela and Callaway as defendants.

On February 19, 2009, Pamela removed that petition to federal district court on the basis of diversity jurisdiction. The federal district court granted Merrill Lynch's motion for interpleader and directed that Suzanne's beneficiary-controlled accounts be

---

[2] The copy of the Panel's award that is included in the appellate appendix is difficult to read, and, consequently, it is unclear whether the amount of the award was $93,295.00 or $93,205.00. Unfortunately, neither the remainder of the appendix nor the parties' pleadings clarify which amount is correct. That said, the precise amount of the fee award does not affect the outcome of this appeal.

transferred from Merrill Lynch to another custodian.[3]  The federal district court also stayed the proceedings pending the outcome of the arbitration proceedings.

On October 28, 2009, Merrill Lynch filed a second amended complaint and included the Estates as defendants.

On November 2, 2009, approximately two weeks after the Panel issued its award, Merrill Lynch filed a motion to confirm the arbitration award to judgment.  Callaway filed a response asking the district court to grant Merrill Lynch's motion and declare her "the rightful owner" of the two accounts at issue.  Id. at 63.  Pamela and the two Estates filed a response and objection to Merrill Lynch's motion, as well as a motion to vacate the award.[4]  In the motion to vacate, Pamela asserted that the Panel "'failed to make a definite award upon the subject matter submitted,' in compliance with 9 U.S.C. § 10," "exceeded their powers contrary to 12 O.S. § 1874," and "fashioned an [a]ward which ha[d] no rational basis and disregard[ed] the law."  Id. at 68.  In support, Pamela argued that Suzanne "only designated a beneficiary for Account No. 659-7115<u>2</u> and did not designate a beneficiary for Account No. 659-7115<u>5</u>,"  thereby requiring, both pursuant to the language of the Merrill Lynch contract and Oklahoma law, that the proceeds of

---

[3] According to the record, "no brokerage firm, bank or credit union [wa]s willing to be the recipient of the[] accounts due to the history of litigation."  App. at 62.

[4] Pamela and the Estates filed an identical motion to vacate the arbitration award in the District Court of Tulsa County.  The state district court denied the motion on January 27, 2010.  The state district court subsequently withdrew its order, concluding, as urged by Pamela and the Estates, that their motion to vacate had been rendered moot by the federal district court's ruling on an identical motion.

Account No. 659-71155 be paid to Suzanne's estate.  Id. at 70 (emphasis in original). Pamela further argued that there was "no [Oklahoma] statute which authorize[d] fees based on the facts and issues presented to the Panel."  Id. at 73.  Finally, Pamela argued that the award was ambiguous and contradictory, failed to address all the claims at issue, and did not constitute a mutual, final and definite award.

On January 26, 2010, the district court issued an opinion and order granting Merrill Lynch's motion to confirm the award and denying Pamela's motion to vacate the award.  In doing so, the district court concluded that: (a) "the Panel's [a]ward [wa]s clear in its denial of all of [Pamela's] claims, including her claim of ownership of Account No. 659-71155," id. at 244; (b) "there [wa]s a contractual basis for the [Panel's] award of attorneys fees [in the amount of $93,205]," id. at 246; and (c) there was no merit to Pamela's allegations that the award was ambiguous, incomplete, internally inconsistent, or that it failed to address her claim that Suzanne could not legally name a beneficiary to her inherited IRAs.  Two days later, on January 28, 2010, the district court entered judgment in favor of Merrill Lynch and against Pamela.

On February 8, 2010, Pamela and the Estates filed a motion for new trial and/or to alter or amend the judgment.  On that same date, Pamela and the Estates also filed a separate motion for relief from judgment.  The motions, in large part, simply reiterated the arguments forwarded by Pamela and the Estates in their original motion to vacate the award.  The district court denied the motions on May 20, 2010.

Pamela and the Estates filed a notice of appeal on June 1, 2010.

II

On appeal from the district court's decision, Appellants offer three reasons why the district court should not have confirmed the arbitration award.  First, they contend the Panel exceeded its powers by disregarding the terms of the contractual relationship between Suzanne and Merrill Lynch.  Second, they contend the Panel exceeded its powers by failing to recognize that Suzanne lacked the legal authority to name a beneficiary for her beneficiary-controlled accounts with Merrill Lynch.  Lastly, they contend that the Panel exceeded its powers by awarding attorney fees and costs in favor of Merrill Lynch, even though Merrill Lynch provided the Panel with no evidence to support the award.

*Standard of review*

"In reviewing the confirmation of an arbitration award, we review the district court's factual findings for clear error and its legal determinations de novo."  Burlington N. and Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla., — F.3d —, 2010 WL 5023257 at *4 (10th Cir. Dec. 10, 2010).  "We must nevertheless 'give extreme deference to the determination of the arbitration panel for the standard of review of arbitral awards is among the narrowest known to law.'"  Hollern v. Wachovia Secs., Inc., 458 F.3d 1169, 1172 (10th Cir. 2006) (quoting Brown v. Coleman, 220 F.3d 1180, 1182 (10th Cir. 2000)).  "It is not enough for [a party challenging an award] to show that the [arbitration] panel committed an error—or even a serious error."  Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S.Ct. 1758, 1767 (2010).  Instead, "[a]n arbitration award will only be

vacated for the reasons enumerated in the Federal Arbitration Act [(FAA)], 9 U.S.C. § 10, or for a 'handful of judicially created reasons.'"  Burlington, 2010 WL 5023257 at *4 (quoting Sheldon, 269 F.3d at 1206).  "Under § 10 of the [FAA], a court may vacate an arbitration award in certain instances of fraud or corruption, arbitrator misconduct, or where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, definite award upon the subject matter admitted was not made."[5]  Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C., 430 F.3d 1269, 1275 (10th Cir. 2005) (internal quotation marks and citation omitted).  As for judicially-created bases for vacating an award, we have recognized at least three: (1) where the award violates public policy; (2) when there was a denial of a fundamentally fair hearing; and (3) manifest disregard of the law.  Sheldon v. Vermonty, 269 F.3d 1202, 1206 (10th Cir. 2001).

---

[5] Section § 10 of the FAA specifically provides as follows:
(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
> (1) where the award was procured by corruption, fraud or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

*Did the arbitration panel exceed its powers in construing the terms of the contract between Suzanne and Merrill Lynch?*

In their first issue on appeal, Appellants contend that the district court erred in confirming the arbitration award because the Panel "exceeded its powers" by "entering an award which was contrary to the explicit terms of the" CRA between Suzanne and Merrill Lynch. Aplt. Br. at 12. In support, Appellants assert the CRA "mandates that if there is no named beneficiary for an account, upon the death of the account holder, the account will be paid to the deceased's estate." Id. at 15. According to Appellants, when Suzanne opened the two beneficiary-controlled accounts with Merrill Lynch she categorized them, under the terms of the CRA, as "'Retirement Account for Client 1' and 'Retirement Account for Client 2,'" and named a primary and contingent beneficiary for only the Client 1 account. Id. at 16 (emphasis in original). Because Suzanne "made no beneficiary designation for 'Retirement Account for Client 2,'" they argue, the proceeds of that account were required, under the terms of the CRA, to be paid to Suzanne's estate (and in turn to Pamela, as Suzanne's sole heir). Id. at 17 (emphasis in original). By determining that Suzanne's beneficiary designations for the Client 1 account also applied to the Client 2 account, Appellants argue, the Panel "render[ed] a decision/award beyond the scope and permissible limits of the CRA." Id. at 18.

As a threshold matter, we note that Appellants failed to present this issue to the district court. In their motion to vacate the arbitration award, Appellants argued, in pertinent part, that "[t]he Panel neglected to address a key issue presented in this case,

12

namely who owns Account No. 659-7115<u>5</u>." Aplt. App. at 70 (emphasis in original).  In

support, Appellants argued that "Suzanne . . . only designated a beneficiary for Account

No. 659-7115<u>2</u> and did not designate a beneficiary for Account No. 659-7115<u>5</u>." <u>Id.</u>

(emphasis in original).  In turn, Appellants argued that under the terms of the CRA and

Oklahoma law, the proceeds of Account No. 659-71155 belonged to Suzanne's estate. <u>Id.</u>

at 71.  Although Appellants also asserted that the Panel "exceeded [its] powers," they

again argued that "the arbitrators failed to render any decision as to the ownership of

Account No. 659-7115<u>5</u>," <u>id.</u> (emphasis in original), and "ignor[ed] the parties' . . .

agreement," <u>id.</u> at 72.  On appeal, Appellants now assert what we perceive to be a slightly

different argument, i.e., that the Panel, "[i]nstead of enforcing the CRA, . . . determined

that a beneficiary designation made as to one account ('Client 1') functioned as the

beneficiary for the second account ('Client 2')."  Aplt. Br. at 18 (emphasis in original).  In

other words, Appellants have effectively shifted their argument from "the Panel neglected

to address an issue" to "the Panel addressed the issue but its reasoning was flawed."

Thus, the issue now asserted by Appellants has been forfeited.  <u>See</u> <u>Turner v. Pub. Serv.</u>

<u>Co. of Colo.</u>, 563 F.3d 1136, 1143 (10th Cir. 2009) (holding that an appellant "may not

lose in the district court on one theory of the case, and then prevail on appeal on a

different theory, even if the new theory falls under the same general category as an

argument presented at trial." (internal quotation marks omitted)).

Although forfeited issues can, on rare occasions, justify judicial intervention, that

is clearly not the case here.  <u>See</u> <u>generally</u> <u>Richison v. Ernest Group, Inc.</u>, — F.3d —,

2011 WL 856271 at *3 (10th Cir. 2011) ("[W]e will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result.").  To be sure, "an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [his] powers'" by "stray[ing] from interpretation and application of the agreement [at issue] and effectively dispens[ing] his own brand of industrial justice . . . ." <u>Stolt-Nielsen</u>, 130 S.Ct. at 1767 (internal quotation marks and brackets omitted).  But, contrary to Appellants' assertion, the Panel in this case did not exceed its powers by concluding that Suzanne intended to designate the same primary and contingent beneficiary for both of her beneficiary-controlled accounts with Merrill Lynch.  Indeed, a review of the CRA that was completed by Suzanne firmly supports the Panel's determination.  Suzanne's entries on the CRA made clear that she, as the sole client (i.e., "Client 1"), intended to create two beneficiary-controlled accounts: one derived from her mother's traditional IRA account, and a second derived from her mother's Roth IRA account.  Her entries further indicated her intent to designate the same primary beneficiary (Amber Callaway) and contingent beneficiary (Phyllis Dorian) for both of these accounts.  The only evidence that potentially cuts against this determination is the fact that Suzanne, in indicating her intent to create an account derived from her mother's Roth IRA account, listed that account under a line on the CRA that read "Retirement Account for Client 2."  Aplt. App. at 137.  But it is apparent that Suzanne was forced to do so because of the way the CRA was designed.  More specifically, the CRA contained a single line for "Retirement Account for Client 1," and a single line for

14

"Retirement Account for Client 2." Thus, Suzanne was forced, in creating two accounts

for herself, to use both of these lines. As for her beneficiary designations, it would have

made no sense for Suzanne to list primary and contingent beneficiaries for "Client 2,"

because there was no "Client 2." Thus, in determining that Suzanne intended for both

accounts to belong to herself, i.e., "Client 1," and for her beneficiary designations for

"Client 1" to apply to both accounts, the Panel acted well within its power to make factual

determinations and did not ignore any provisions of the CRA.

> *Did the arbitration panel exceed its powers in concluding that Suzanne*
> *possessed the legal authority to name beneficiaries for her beneficiary-*
> *controlled accounts with Merrill Lynch?*

In their second issue on appeal, Appellants contend that the district court erred,

and the arbitration award should have been vacated, because the Panel exceeded its

powers by concluding that Suzanne possessed the legal authority to name beneficiaries

for the two beneficiary-controlled accounts she created with Merrill Lynch. In support,

Appellants assert that when Suzanne "inherited IRA accounts from her mother," she

"elected to retain her 'beneficiary' status and not become the 'owner' of the accounts."

Aplt. Br. at 24. More specifically, they assert the two beneficiary-controlled accounts

that Suzanne created "were established in the name of <u>Mary Whitney (deceased)</u>," rather

than in Suzanne's name. <u>Id.</u> at 21 (emphasis in original). And, Appellants assert, Internal

Revenue Service regulations and publications "make[] clear that a beneficiary may only

be designated by the 'owner' of the IRA, and thus Suzanne . . . could not legally name a

successor beneficiary to herself for 'Client <u>1</u>' or 'Client <u>2</u>' (because she elected to

15

maintain her 'beneficiary' status by opening the accounts in the name of her deceased mother)." Id. at 24-25 (emphasis in original). "Therefore," Appellants argue, "the accounts must pass to her estate," and the Panel exceeded its powers in concluding otherwise. Id. at 25.

As with their first issue on appeal, this issue has been forfeited due to Appellants' failure to assert it below. See Turner, 563 F.3d at 1143. And, like their first issue on appeal, Appellants cannot establish that judicial intervention is appropriate on this issue. At the arbitration hearing, Merrill Lynch presented expert witness testimony from Jon Trudgeon, an Oklahoma lawyer who specializes in IRAs and employee benefit plans. Aplee. App. at 79-80. Trudgeon opined that pertinent IRS regulations clearly provided that an IRA account, upon the death of the owner, "becomes the account of the designated beneficiary," and that, consequently, Suzanne was the owner of the two beneficiary-controlled accounts she created with Merrill Lynch following her mother's death. Id. at 81. In turn, Trudgeon testified that Suzanne possessed the legal authority to name Callaway as the primary beneficiary for the two accounts, id. at 86-87, and that, upon Suzanne's death, Callaway became the owner of the two accounts. Id. at 82. Appellants' counsel obviously disagreed with Trudgeon's opinions and vigorously cross-examined him about them. E.g., id. at 89 ("I absolutely disagree" with Appellants' counsel's view of the issue). Nevertheless, it was within the Panel's authority to decide which of the two proposed interpretations of the law were correct, and, by siding with Trudgeon and Merrill Lynch, the Panel clearly did not exceed its powers.

16

*Did the arbitration panel exceed its powers by awarding fees and costs to Merrill Lynch?*

In their third and final issue on appeal, Appellants contend that the arbitration award should not have been confirmed because the Panel exceeded its powers by awarding fees and costs to Merrill Lynch in the absence of sufficient supporting evidence. Although Appellants concede that Merrill Lynch submitted to the Panel an affidavit of fees and costs, Appellants complain that the affidavit was unsupported by "billing statements, hourly rates or evidence of time expended . . . ." Aplt. Br. at 27.

Appellants raised this issue below in a motion for new trial and/or to alter or amend the judgment entered by the district court. Consequently, we must apply a slightly different standard of review to the district court's decision. Specifically, we review the denial of a motion for new trial or a motion to alter or amend the judgment for abuse of discretion. Price v. Wolford, 608 F.3d 698, 706 (10th Cir. 2010); M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 763 (10th Cir. 2009). A district court abuses its discretion if its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Doe, 572 F.3d 1162, 1172 (10th Cir. 2009). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Fed. Deposit Ins. Corp. v. Rocket Oil Co., 865 F.2d 1158, 1160 n.1 (10th Cir. 1989) (per curiam).

Although Appellants raised this general issue below, they argued to the district

court that Oklahoma law was controlling and required the submission of detailed support

for a fee award.  See Aplt. App. at 266 ("Merrill Lynch did not submit any detailed

records in support of its request nor did it attempt to address the twelve . . . factors

(addressed below).  This is required by Oklahoma law.") (emphasis in original).  To the

extent Appellants now argue on appeal that federal law required Merrill Lynch to submit

detailed records in support of the fee award, that argument has been forfeited and

Appellants have not argued, let alone established, that judicial intervention is warranted

on this forfeited issue.

       Focusing solely on the question of whether Oklahoma law required the submission

of detailed records in support of the fee award, Appellants are correct in noting that "[t]he

[general] criteria for determining a reasonable fee for legal services [under Oklahoma

law] are set out in State ex rel. Burk v. City of Oklahoma City[, 598 P.2d 659 (Okla.

1979)]."  Finnell v. Seismic, 67 P.3d 339, 347 (Okla. 2003).  "An attorney seeking an

award must submit to the trial court detailed time records and must offer evidence of

reasonable value of the services performed based on the standards of the legal community

in which the attorney practices."  Id.  "The correct procedure for arriving at a reasonable

fee is (a) first to determine from the detailed time records a baseline fee by multiplying

hours expended times the attorney's hourly rate and (b) then to enhance that fee by

adding an amount arrived at by applying the factors set out in Burk, taken from federal

court practice, or those provided in Rule 1.5 of the Oklahoma Rules of Professional

Conduct."  Id.  "The final determination of an appropriate fee is further subject to the rule

that it must bear some reasonable relationship to the amount in controversy." Id.

The district court acknowledged these guidelines, but proceeded to note, citing the Oklahoma Supreme Court's decision in Conti v. Republic Underwriters Insurance Company, 782 P.2d 1357, 1362 (Okla. 1989), that the guidelines were not absolute and that a trial court in Oklahoma could, without abusing its discretion, award fees in a situation where counsel failed to follow the Burk documentation guidelines. Aplt. App. at 363-64. Further, the district court noted that Panel's fee award in this case "had a basis in law and fact," and that there was therefore "no reason to vacate the Panel's decision" in that regard. Id. at 364.

We conclude there is no basis for reversing the district court's decision. Although it may have been preferable, given the Burk criteria, for Merrill Lynch to have submitted detailed time records for its attorneys, the rationale offered by the district court in decision refusing to vacate the panel's fee award was in no way "arbitrary, capricious, whimsical, or manifestly unreasonable." Doe, 572 F.3d at 1172. Nor did the district court "exceed[] the bounds of permissible choice in the circumstances." Rocket Oil, 865 F.2d at 1160 n.1.

*Pending motions*

Pending before us are two motions filed by Appellants. The first is a motion to strike Merrill Lynch's appendix. The second is a motion to strike Merrill Lynch's appellate brief. For the reasons that follow, we deny both motions.

19

*1) Motion to strike Merrill Lynch's appendix*

According to Appellants, the majority of Merrill Lynch's supplemental appendix is composed of material, including selected transcript pages from the arbitration hearing, "that was not provided to the District Court . . . ." Aplt. Mot. to Strike Aplee. App. at 1. Appellants further contend, with respect to the challenged transcript pages in Merrill Lynch's appendix, that Merrill Lynch failed to follow applicable Tenth Circuit rules for ordering transcripts and also failed to have those transcript pages properly authenticated. Lastly, Appellants complain that the appendix fails to comply with Fed. R. App. P. 30(d) because it does not include "the relevant docket entries (i.e., the docket sheet)." Id. at 10.

Merrill Lynch, in response to the motion to strike its appendix, first notes that, notwithstanding statements in both Fed. R. App. P. 30(b)(1) and the Practitioner's Guide to the United States Court of Appeals for the Tenth Circuit encouraging parties to agree on the contents of the appendix, Appellants "made no attempt to consult with counsel for Merrill Lynch as to the contents of the [Appellants'] appendix, which could have resulted in the filing of a joint appendix and obviated the current dispute." Aplee. Resp. at 1-2. In turn, Merrill Lynch contends that, with respect to the state court pleadings included in its appendix, the district court "was well aware of" the underlying state court proceedings. Id. at 3. "In any event," Merrill Lynch argues, "it is well established that courts may take judicial notice of pleadings filed in other actions pursuant to Fed. R. Evid. 201(b)," and thus "there is no basis whatsoever to strike th[ese] additional pleadings . . . ." Id. As for the excerpts from the arbitration hearing transcripts, Merrill Lynch asserts it submitted

those "only to demonstrate the accuracy of its representations regarding the arbitration proceedings," and urges us to exercise our "discretion to consider the transcript regardless of whether it was submitted to the District Court." Id. at 4. Merrill Lynch also correctly notes that the transcript order procedures cited by Appellants "are necessarily applicable only to the proceedings before the district court from which the appeal is taken, [and] not to an underlying arbitration proceeding . . . ." Id. Finally, with respect to its purported failure to comply with Fed. R. App. P. 30, Merrill Lynch asserts that it interpreted that Rule, and the corresponding Tenth Circuit Rule, "to require the submission of only the items omitted, rather than requiring duplication of any of the items filed in the original appendix, including the docket sheet." Id. at 6.

The only potentially meritorious argument asserted by Appellants is that portions of the materials, including the selected transcript pages from the arbitration hearing, were not before the district court. That said, however, we have reviewed these materials and conclude they are authentic and useful for purposes of resolving the appeal. Thus, we exercise our discretion and take judicial notice of those materials. As for Appellants' remaining arguments, they are meritless for the reasons argued by Merrill Lynch. Accordingly, Appellants' motion is denied in its entirety.

*2) Motion to strike Merrill Lynch's appellate brief*

In their second motion, Appellants move to strike Merrill Lynch's appellate brief. In support, Appellants argue that the challenged brief does not comply with Fed. R. App. P. 28 or 10th Cir. R. 28 because most of the statements of fact in the brief "are

21

conclusory" in nature and unsupported by specific references to the record.  Aplt. Mot. to Strike Aplee. Br. at 2.  Appellants also contend that the challenged brief relies on materials included within Merrill Lynch's appendix that were not submitted to the district court.

We deny Appellants' motion.  To the extent there are technical violations of Fed. R. App. P. 28 or 10th Cir. R. 28 in Merrill Lynch's appellate brief, they are not significant enough to warrant the striking of that brief.  As for Merrill Lynch's reliance on materials that were not submitted to the district court, we have decided to take judicial notice of those materials because they are undisputed and relevant to the appeal.

*Merrill Lynch's request for appellate fees and costs*

Finally, Merrill Lynch requests an award of appellate attorney fees and costs pursuant to 28 U.S.C. § 1927 and/or Federal Rule of Appellate Procedure 38.  In support, Merrill Lynch argues that Appellants and their counsel "have refused to accept the determinations of the Tulsa County District Court Judge and jury, the Oklahoma Court of Civil Appeals, the Arbitration Panel and the [district court], all the while recycling and reiterating the same arguments they have espoused since the inception of this litigation." Aplee. Br. at 19-20.  "Sanctions in the form of attorney fees and single or double costs are thus warranted," Merrill Lynch argues, "to compensate [it] for being forced to defend the arbitration award in this appeal."  Id.

Section 1927, titled "Counsel's liability for excessive costs," provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously

may be required by the court to satisfy personally the excess costs, expenses, and

attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Federal

Rule of Appellate Procedure 38 similarly provides that "[i]f a court of appeals determines

that an appeal is frivolous, it may, after a separately filed motion or notice from the court

and reasonable opportunity to respond, award just damages and single or double costs to

the appellees."[6] Fed. R. App. P. 38.

Although "we do not take sanction decisions lightly," Lewis v. Circuit City Stores,

Inc., 500 F.3d 1140, 1153 (10th Cir. 2007), we have emphasized that "[b]ecause

arbitration presents a 'narrow standard of review,' Section 1927 sanctions are warranted

if the arguments presented are 'completely meritless.'" Id. (quoting Dominion Video,

430 F.3d at 1279). Further, in Lewis, we cited with approval the following statement

from the Eleventh Circuit explaining "why the availability of sanctions may be more

appropriate in an appeal involving a prior arbitration award":

> When a party who loses an arbitration award assumes a never-say-die
> attitude and drags the dispute through the court system without an
> objectively reasonable belief it will prevail, the promise of arbitration is
> broken. Arbitration's allure is dependent upon the arbitrator being the last
> decision maker in all but the most unusual cases. The more cases there are,
> like this one, in which the arbitrator is only the first stop along the way, the
> less arbitration there will be. If arbitration is to be a meaningful alternative
> to litigation, the parties must be able to trust that the arbitrator's decision
> will be honored sooner instead of later.

---

[6] "A statement inserted in a party's brief that the party moves for sanctions is not sufficient notice" under Rule 38. Fed. R. App. P. 38 advisory committee's notes to 1994 amendments. Instead, "[a] separately filed motion requesting sanctions" is required. Id. Because Merrill Lynch has not filed a separate motion requesting sanctions pursuant to Rule 38, we cannot rely on Rule 38 as a basis for imposing sanctions on Appellants.

> Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions.

Id. at 1153-54 (quoting B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 913 (11th Cir. 2006)).

Applying the Lewis and Dominion Video standards to this case, we agree with Merrill Lynch that sanctions are appropriate in this appeal.  To begin with, it is beyond dispute that the first two issues asserted on appeal by Appellants are "completely meritless."  As we have already discussed, neither of those issues were presented by Appellants to the district court, and neither come close to satisfying the narrow, plain-error type standard applicable to issues raised for the first time on appeal.  Similarly, Appellants' challenge to the Panel's fee award, though presented to the district court, is meritless.  Considering the entire history of this dispute, it is apparent that Appellants and their counsel have, as suggested by Merrill Lynch, adopted the "never-say-die" attitude that we have previously condemned.  Indeed, Appellants and their counsel have stubbornly refused to honor the Panel's decision, even though they have no realistic basis for overturning it.  Thus, we conclude it is necessary to sanction Appellants' counsel pursuant to § 1927 by directing them to pay Merrill Lynch's appellate fees and costs.[7]

---

[7] As previously noted, because Merrill Lynch has not filed a separate motion for sanctions pursuant to Fed. R. App. P. 38, we are not authorized to impose sanctions against Appellants.

## III

The judgment of the district court is AFFIRMED.  Appellants' motions to strike Merrill Lynch's appendix and appellate brief are DENIED.  Merrill Lynch's request for an award of appellate fees and costs pursuant to 28 U.S.C. § 1927 is GRANTED.

Merrill Lynch is directed to submit an affidavit outlining its appellate fees and costs within ten days from the date of this order and judgment.  Appellants' counsel in turn shall have ten days to respond to Merrill Lynch's affidavit.

Entered for the Court

Mary Beck Briscoe
Chief Judge

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Elisabeth A. Shumaker<br>Clerk of Court | April 04, 2011 | Douglas E. Cressler<br>Chief Deputy Clerk |

Mr. Steven Massey Harris
Mr. Steven Max Harris
Doyle, Harris, Davis & Haughey
1350 South Boulder
Suite 700
Tulsa, OK 74119

**RE:      10-5072, Merrill Lynch, Pierce, Fenner v. Whitney, et al**
           Dist/Ag docket: 4:09-CV-00078-GKF-FHM

Dear Counsel:

Enclosed is a copy of the order and judgment.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker

Elisabeth A. Shumaker
Clerk of the Court


cc:      Dixie L. Coffey
         Tara A. LaClair
         Curtis Alan Parks


EAS/kf